UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

02 MAY 28 PM 2: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

LISA HOPE ANTOINE,                    )
                                      )
          Plaintiff,                  )
                                      )
vs.                                   )          Civil Action No. CV-01-S-3304-S
                                      )
COUNTRYWIDE HOME LOANS,               )
                                      )          ENTERED
          Defendant.                  )
                                                 MAY 2 8 2002

MEMORANDUM OPINION

This is an action based upon the Truth in Lending Act of 1968, 15 U.S.C. § 1601 *et seq.*

Plaintiff, Lisa Hope Antoine, financed the purchase of a home through a $76,000 loan from APPEX

Mortgage Company that was closed on January 10, 1998. APPEX Mortgage assigned the loan to

Flagstar Bank, FSB, which in turn reassigned it to defendant Countrywide Home Loans

("Countrywide"). Countrywide remained in control of plaintiff's loan until September 2, 1999, when

plaintiff prepaid the outstanding balance in full, prior to the maturation date for final payment. As

a consequence, Countrywide was obligated to "promptly refund any unearned portion of the interest

charge to the consumer." 15 U.S.C. § 1615(a)(1). Countrywide refunded only $1.86. Plaintiff

contends that Countrywide failed to properly calculate the unearned interest owed to her as provided

by 15 U.S.C. §§ 1615(b) & (d), and that it should have refunded $4,017.39.

Plaintiff, who appears *pro se*, filed the present action on December 21, 2001, seeking "a

judgment in the amount of $148,554.16, which includes criminal (15 U.S.C. section 1611(3)) and

civil (15 U.S.C. section 1640) liabilities of $37,138.54 and punitive damages of $111,415.62."

(Complaint ¶ 5.) She subsequently filed a motion to amend her complaint, to add a state law claim

for breach of contract (doc. no. 11), which is pending. The case also is before the court on

Countrywide's motion for judgment on the pleadings (doc. no. 7).

> Federal Rule of Civil Procedure Rule 12 provides that,
>
> > [a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, *matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment* and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c) (emphasis added). Both parties submitted evidentiary materials in support of and in opposition to Countrywide's motion. The court has relied on those matters in formulating a better understanding of plaintiff's claims. Accordingly, Countrywide's motion shall be addressed as a motion for summary judgment. *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1097 n.46 (11th Cir. 2001) ("Because the court considered a matter outside the four corners of the complaint, it should have treated Northside's motion [for judgment on the pleadings] as one for summary judgment and disposed of it as provided in Fed. R. Civ. P. 56.").

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

The standards applicable to motions for summary judgment are more demanding when applied to the claims of a party such as the plaintiff herein, who is not represented by counsel. Parties who appear *pro se* are afforded a leniency not granted to those who are represented by counsel. *Cf., e.g., Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (observing that, "however inartfully pleaded," the allegations of a *pro se* complaint filed by an inmate of a state penitentiary under 42 U.S.C. § 1983 are held to "less stringent standards than formal pleadings drafted by lawyers"); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (same); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. 1981)[1] ("A *pro se* complaint, however inartfully drafted, must be held to less rigorous standards than the formal pleadings prepared by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Haines*).

Even so, the leniency accorded *pro se* litigants is not unqualified. As the Sixth Circuit has written:

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

> While courts must apply "less stringent standards" in determining whether *pro se* pleadings state a claim for which relief can be granted, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), *pro se plaintiffs are not automatically entitled to take every case to trial*. As this court has noted, *the lenient treatment generally accorded to pro se litigants has limits.*

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (emphasis added). A *pro se* plaintiff "must still meet the essential burden of establishing that there is a genuine issue as to a fact material to his case." *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997) (citing *Brown v. Crawford*, 906 F.2d 667, 669-70 (11th Cir. 1990)).

## I. SUMMARY OF FACTS

Plaintiff financed the $76,000 purchase price of her home through a loan from AAPEX Mortgage Company that was closed on January 10, 1998. The loan was secured by a note and mortgage providing that the indebtedness was payable over thirty years at an annual percentage rate of 7.25 percent.[2] AAPEX Mortgage assigned plaintiff's note and mortgage to Flagstar Bank, FSB later that same day, January 10, 1998.[3] Flagstar Bank reassigned the note and mortgage to defendant Countrywide a year later, on January 15, 1999.[4] Between February 5, 1998, the date on which plaintiff's first monthly payment was made, and September 2, 1999, the date of her last payment, plaintiff paid a total of $86,103.28 toward her indebtedness.[5] Thus, by September 2, 1999 — one year, seven months, and some days after execution of her note and mortgage — plaintiff had paid $10,103.23 more than the principal indebtedness. Countrywide refunded to plaintiff $1.86 in unearned interest on September 21, 1999.

---

[2] Complaint (doc. no. 1) ¶ 4.

[3] *Id.*

[4] *Id.*

[5] *Id.*

4

The present action actually is the third suit growing out of the foregoing transactions that plaintiff has filed in this court. Plaintiff's first suit, against Flagstar Bank FSB, was filed on March 20, 2001, and alleged that Flagstar had violated 15 U.S.C. §§ 1606(a),[6] 1615(a),[7] and 1639(c).[8] The pertinent facts of that action were recorded in a memorandum opinion entered by Senior Judge William M. Acker on July 24, 2001, granting summary judgment to Flagstar Bank.

> Under the terms of Antoine's note, she was to re-pay $76,000 at an annual rate of 7.25%. Until the principal was re-paid, interest was to be charged on the unpaid balance of the principal. *The note set Antoine's monthly payment at $518.45 and specified that it was to be applied "to interest before principal." Similarly, the mortgage specified that monthly payments were to be applied to the interest due before being applied to the principal due.* The first monthly payment was due March 1, 1998. If Antoine still owed amounts under the Note as of the Maturity Date, February 1, 2028, she was obligated to fully satisfy the outstanding amount at that time.

> The note also gave Antoine the right to pay down the principal ahead of the monthly schedule. Provision four, "Borrower's Right To Prepay," reads as follows:

>> I have the right to make payments of *principal* at any time before they are due. *A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.*

>> I may make a full payment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

> By a "Servicing Notice," Antoine's lender informed her that it had assigned the servicing of her note to Flagstar. The Servicing Notice also instructed Antoine that payment coupons had to accompany any payment. *The coupons provided a space for the borrower to indicate to the loan servicer how to allocate any amount paid that was in excess of the monthly payment. The borrower could indicate, in*

---

[6] 15 U.S.C. § 1606(a) defines the annual percentage rate applicable to any extension of consumer credit.

[7] 15 U.S.C. § 1615(a)(1) provides: "If a consumer prepays in full the financed amount under any consumer credit transaction, the creditor shall promptly refund any unearned portion of the interest charge to the consumer."

[8] 15 U.S.C. § 1639(c) provides for no prepayment penalty.

> *dollars and cents, how much of the additional payment was to go to "principal," "other," or "escrow."*
>
> From February 5, 1998 to January 15, 1999, at which time her note was transferred to another entity [*i.e., the defendant in the present action, Countrywide Home Loans*], Antoine made 16 payments to Flagstar. During some months, she made multiple payments. In July and December, she made no payments at all. The size of the payments ranged from $519 to $4500. Some checks were accompanied by more than one coupon, *but no coupon contained an amount written in for "principal,"* "escrow," or "other." Only one check included extra information written by Antoine. The memo line of that check, written for $1,560.00 and received by Flagstar on March 6, 1998, read: "May, June, July." *Over the period in question, Flagstar allocated to future monthly payments all the amounts received that exceeded what was currently due.*[9]

*Lisa Antoine v. Flagstar Bank, FSB*, No. CV-01-AR-0988-S, memorandum op. at 1-3, (N.D. Ala.

July 24, 2001) (emphasis supplied).

Plaintiff's second action was instituted against the present defendant on August 17, 2001, and

alleged that Countrywide had failed to refund the correct amount of unearned interest, and demanded

a judgment in the amount of $10,103.28 plus costs and interest. Plaintiff's complaint, however, did

not allege that Countrywide violated any particular federal or state statute. *See Lisa Antoine v.*

*Countrywide Home Loans*, No. CV-01-J-2075-S.[10] Consequently, Countrywide filed a motion to

dismiss for failure to state a claim upon which relief could be granted, and Judge Inge Pritz Johnson

entered an order dismissing that complaint, without prejudice, by means of an order entered on

September 13, 2001.[11]

Plaintiff then instituted the present action on December 21, 2001.

---

[9]Plaintiff's Motion in Opposition to Summary Judgment, attached exhibit 3, at 1-3.

[10]Defendant's Reply Brief to Plaintiff's Motion in Opposition to Summary Judgment, tab B.

[11]*Id.*, tab C, at unnumbered page 3.

## II. DISCUSSION

**A.    Plaintiff's Claims Under The Truth In Lending Act**

The Truth In Lending Act ("TILA") was originally enacted in 1968 for the purpose of enhancing "economic stabilization" and "competition among the various financial institutions and other firms engaged in the extension of consumer credit." 15 U.S.C. § 1601(a).  In furtherance of those goals, the TILA seeks to

> assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a).

> "To accomplish its purpose, the TILA and its implementing Regulation Z [*see* 12 C.F.R. § 226] require lenders to disclose to consumers certain material terms clearly and conspicuously in writing, in a form that the consumer may examine and retain for reference." *In re Ralls*, 230 B.R. 508, 515 (E.D. Pa 1999).  *15 U.S.C. § 1640 creates a private right of action for violations of TILA.*

*Cardiello v. The Money Store, Inc.*, No. 00 Civ. 7332, 2001 U.S. Dist. WL 604007, at * 3 (S.D.N.Y. June 1, 2001) (emphasis supplied).

Section1640(a) of the TILA defines the damages recoverable by a civil litigant for a violation of the Act in the following manner:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1)  any *actual damage* sustained by such person as a result of the failure;
>
> (2)(A)(i)  in the case of an individual action twice the amount of any finance charge in connection with the transaction, ...(iii) *in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by*

7

*real property or a dwelling, not less than $200 or greater than $2,000*; or

> ...

> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court...

15 U.S.C. § 1640(a) (emphasis supplied).  The Eleventh Circuit summarized the damages that are recoverable under TILA in *Turner v. Beneficial Corp.*, 242 F.3d 1023 (11th Cir. 2001):

> In addition to allowing for actual damages [as provided in § 1640(a)(1)], TILA provides three other remedies for violations of its provisions.  First, TILA empowers the Federal Trade Commission as its overall enforcement agency, 15 U.S.C. § 1607(c), and provides other federal agencies with enforcement authority over specific categories of lenders. 15 U.S.C. § 1607(a). The enforcing agencies are authorized to require the creditor to "make an adjustment to the account of the person to whom credit was extended, to assure that such person will not be required to pay a finance charge in excess of the finance charge actually disclosed or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower." 15 U.S.C. § 1607(e)(1)   Second, TILA imposes criminal liability on persons who willfully and knowingly violate the statute. 15 U.S.C. § 1611. Finally, TILA creates a private cause of action for statutory damages which may be assessed in addition to any actual damages awarded.  15 U.S.C. § 1640(a)(2)(A).

*Turner*, 242 F.3d at 1025 (footnote omitted).

In the present action, plaintiff seeks relief under both § 1640 (civil liability) and § 1611 (criminal liability).[12] The civil liability provided for in §1640 is a private cause of action available

---

[12]15 U.S.C. § 1611 provides:

Whoever willfully and knowingly

> (1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued there under,
> (2) uses any chart or table authorized by the Board under section 1606 of this title in such a manner as to consistently understate the annual percentage rate determined under section 1606(a)(1)(A) of this title, or
> (3) otherwise fail to comply with any requirement imposed under this subchapter,

shall be fined not more than $5,000 or imprisoned not more than one year, or both.

to plaintiff; however, the criminal liability provided for in § 1611, which allows for punitive damages as well as imprisonment, is not a private cause of action available to plaintiff. *Cf. Wood v. Flatau*, 643 F.2d 188, 191 n.9 (5th Cir. 1980).

In support of her claim pursuant to § 1640, plaintiff alleges that Countrywide intentionally miscalculated the unearned interest actually owed to her in violation of § 1615(a), which provides: "If a consumer prepays in full the financed amount under any consumer credit transaction, the creditor shall promptly refund any unearned portion of the interest charge to the consumer." 15 U.S.C. § 1615(a)(1).[13]

## B.   Countrywide's Statute of Limitations Defense

Countrywide argues that plaintiff's claims are barred by TILA's statute of limitations.

Even assuming all of plaintiff's factual allegations to be true ... plaintiff's Complaint nevertheless fails to state any claim upon which relief can be granted. Because plaintiff received the allegedly insufficient refund in September 1999, more than one year before she commenced this action against Countrywide, the one-year statute of

---

[13]Subsections 1615(b) and (d) provide instruction as to how the unearned interest refund should be calculated:

**(b)  Use of "Rule of 78's" prohibited**

      For the purpose of calculating any refund of interest required under subsection (a) of this section for any precomputed consumer credit transaction of a term exceeding 61 months which is consummated after September 30, 1993, the creditor shall compute the refund based on a method which is at least as favorable to the consumer as the actuarial method.

...

**(d)  Definitions**

      For the purposes of this section—

      **(1)  Actuarial method**
      The term "actuarial method" means the method of allocating payments made on a debt between the amount financed and the finance charge pursuant to which a payment is applied first to the accumulated finance charge and any remainder is subtracted from, or any deficiency is added to, the unpaid balance of the amount financed.

15 U.S.C. §§  1615(b) &(d).

9

limitations for her TILA claim has run.[14]

The statute of limitations to which Countrywide refers appears in § 1640(e), which provides: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year* from the *date of the occurrence* of the violation." 15 U.S.C. § 1640(e) (emphasis supplied).

Since the enactment of the TILA in 1968, there has been some debate among the Circuits regarding whether § 1640(e) provides a jurisdictional requirement that must be met, or a statute of limitations that is subject to equitable tolling. The Eleventh Circuit first addressed that issue in *Ellis v. General Motors Acceptance Corporation*, 160 F.3d 703 (11th Cir. 1998), and held that TILA is subject to equitable tolling:

> When Congress enacts statutes creating public rights or benefits, it can impose time limits on their availability. These time limits can either completely extinguish the right or simply bar the remedy for enforcement. In the former case, jurisdiction does not exist because the cause of action has been totally extinguished. In the latter case, the court continues to have jurisdiction and has the discretion to consider particular circumstances affecting the ability of a party seeking review to comply with the time limits, which can be tolled when principles of equity render their rigid application unfair. *See Zipes v. Trans Would Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Holmberg v. Armbrecht*, 327 U.S. 392, 395-96, 66 S.Ct. 582, 90 L.Ed. 743 (1946).
>
> "Equitable tolling" is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances. *See Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 347, 22 L.Ed. 636 (1874) (where a party injured by another's fraudulent conduct "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered ..."). *See also Osterneck v. E.T. Barwick Indus.*, 825 F.2d 1521, 1535 (11th Cir. 1987), *aff'd, Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (if third party is in privity, or a principal-agent relationship with the defendant exists, defendant's approval of the concealment may be sufficient to toll the statute). Unless Congress states otherwise, equitable tolling should be read into every federal statute

---

[14]Defendant's Memorandum in Support of Summary Judgment, at 1-2.

of limitations. *Holmberg*, 327 U.S. at 394-96, 66 S.Ct. 582.

> ...

> The issue of whether TILA is subject to equitable tolling is one of first impression in this circuit. Every other circuit that has considered the issue has held that TILA is subject to equitable tolling. *See Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3rd Circ. 1998) (facts virtually identical to those here, court found § 1640(e) subject to equitable tolling); *Jones v. TransOhio Savings Ass'n.*, 747 F.2d 1037, 1041 (6th Cir. 1984) (§ 1640(e) subject to equitable tolling); *King v. California*, 784 F.2d 910, 914-15 (9th Cir. 1986) (*accord* with *TransOhio*); *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787 (D. Md. 1998); *see also Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166-67 (7th Cir. 1997) (citing *King* and *TransOhio* with approval).

> ...

> Despite TILA's clearly remedial purpose, if we were to read its time limit literally, consumers whose cause of action was fraudulently concealed from them until after a year had passed could not pursue a cause of action under TILA. That would lead to the anomalous result that a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their victims' remedy. We cannot believe this was Congress' intent. Rather, in these circumstances we apply the general rule that equitable tolling applies to all federal statutes unless the statute states otherwise. *Holmberg*, 327 U.S. at 394-95, 66 S.Ct. 582. We therefore agree with the Third, Sixth, and Ninth Circuits that the statute of limitations in TILA is subject to equitable tolling.

*Ellis*, 160 F.3d at 706, 708.

Plaintiff executed her note and mortgage on January 10, 1998. The mortgagor's rights under those documents were transferred to Countrywide on January 15, 1999. Plaintiff's last payment on the note and mortgage was made on September 2, 1999, and Countrywide refunded what it calculated as the unearned interest owing to plaintiff on September 21, 1999. Consequently, "the date of the occurrence of the violation" of § 1615(a) would be the date on which Countrywide refunded unearned interest, September 21, 1999. Plaintiff therefore had until September 21, 2000, one year from the date of the occurrence of the alleged violation of § 1615(a)(1), in which to file suit.

11

She failed to do so. Her first attempt to assert her rights against Countrywide occurred on August 17, 2001, almost one full year *after* the expiration of the limitations period specified in § 1640(e). That action was dismissed on September 13, 2001. Plaintiff then waited three more months before filing the present action on December 21, 2001.

Plaintiff has not argued that the statute of limitations should be equitably tolled, nor has she offered any evidence that would support equitable tolling. Accordingly, plaintiff's claim expired on September 21, 2000, and Countrywide's motion for judgment on the pleadings, construed as a motion for summary judgment, is due to be granted.

**C.     Plaintiff's Motion To Amend Her Complaint**

In response to Countrywide's motion for judgment on the pleadings, plaintiff filed a motion for leave to amend her complaint on May 15, 2002, to add a state law claim that Countrywide breached the terms of her note and mortgage contract.[15]  Of course, plaintiff seeks to circumvent Countrywide's statute of limitations defense: *i.e.*, the Alabama statute of limitations applicable to actions for breach of contract is six years, if the writing was not under seal, and ten years if the contract or writing was executed under seal. *See* Alabama Code §§ 6-2-33(1) (ten year statute), 6-2-34(4) (six year statute) (1975) (1993 Replacement Vol.). Specifically, plaintiff alleges that:

> Defendant breached the contract by not complying with paragraphs 5 and 13 of the Note and Mortgage, respectively which clearly state:
>
>> If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under

---

[15] *See* Motion for Leave to Amend Complaint (doc. no. 11).

this Note or by making a direct payment to me.

The federal law that sets maximum loan charges for the Note and Mortgage is 15 U.S.C. § 1615(b). . . .[16]

Countrywide argues in response that plaintiff invoked this court's federal question jurisdiction under 28 U.S.C. § 1331, and that her state law breach of contract claim accordingly should be dismissed, because "a breach of contract claim ... would *not* arise under the Constitution or laws of the United States, no federal question would be presented, and this Court would lack subject matter jurisdiction."[17] This court observes, however, that under 28 U.S.C. § 1367(a) it may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy..." Even so, the court also "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the . . . court has dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(c)(4).

In considering whether to exercise supplemental jurisdiction, the court entertained the possibility of allowing plaintiff to amend her complaint to add a state law claim of breach of contract based upon the parties' obvious complete diversity of citizenship, but concluded that she could not satisfy the requisite amount in controversy. 28 U.S.C. § 1332(a)(1) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ." While plaintiff *alleges* the matter in controversy exceeds $75,000, even a cursory review of Alabama law establishes that such cannot be the case. To begin with, neither punitive damages

---

[16]Motion to Amend Complaint (attached to doc. no. 11), at 1-2.
[17]Defendant's Reply Brief, at 3.

13

nor damages for mental anguish are recoverable for a breach of contract under Alabama law; rather, only actual, or compensatory damages. *See generally* Jenelle Mims Marsh & Charles W. Gamble, *Alabama Law of Damages* §§ 4-6, 17-1 (4th ed. 1999) (citing cases). Further, given the fact that plaintiff's breach of contract claim quoted above seeks to incorporate by reference "[t]he federal law that sets maximum loan charges for the Note and Mortgage . . . 15 U.S.C. § 1615(b)," the actual damages she is entitled to recover — the alleged overpayment of unearned interest — cannot exceed the full amount she paid in excess of the principal amount originally financed, $10,103.23. To that amount she might seek to add $2,000 pursuant to 15 U.S.C.§ 1640(a),[18] but even the sum of those two figures does not satisfy the requisite amount in controversy. Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

Done this **28th** day of May, 2002.

United States District Judge

---

[18]Section 1640(a) provides in pertinent part:

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to the sum of —

  (1)  any actual damage sustained by such person as a result of the failure;

  (2)(A)(i)  in the case of an individual action twice the amount of any finance charge in connection with the transaction ... (iii) *in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2000. . . .*

15 U.S.C. § 1640(a) (emphasis supplied).

14